```
UNITED STATES DISTRICT COURT
  SOUTHERN DISTRICT OF INDIANA
      INDIANAPOLIS DIVISION
```

| | |
|---|---|
| GREGORY A. GOUDY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   No. 1:12-cv-1669-WTL-MJD |
| CAROLYN W. COLVIN, acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Gregory A. Goudy requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Mr. Goudy's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

### I.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into

her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## II. <u>BACKGROUND</u>

Gregory Goudy protectively filed for SSI and DIB on November 10, 2009, alleging he became disabled on June 17, 2009, due to status post cervical discectomy and fusion, C3-4, and diabetes mellitus. Mr. Goudy was born on January 8, 1957, and was fifty-two years old on the alleged disability onset date. He graduated from high school and completed college in 2002, obtaining a certification to teach Kindergarten through sixth grade in the state of Indiana. Mr. Goudy has prior relevant work experience as an auto assembler and parts inspector for Chrysler. In April 2007, Mr. Goudy took a company buy-out, and since then he has been substitute teaching several days a week.

Mr. Goudy's application was denied initially and upon reconsideration. Following the denial upon reconsideration, Mr. Goudy requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A video hearing was held by ALJ JoAnn L. Anderson, who presided over the hearing from Falls Church, Virginia, on May 17, 2011. Mr. Goudy was unrepresented by counsel at the hearing. The ALJ issued her decision denying Mr. Goudy's claim on October 3, 2011. The Appeals Council adopted the ALJ's findings and conclusions on October 9, 2012. Mr. Goudy then filed this timely appeal.

*Medical Evidence*

Mr. Goudy began treating at the Veterans Affairs Northern Indiana Health Care System in Marion, Indiana in 2009. He reported that he had been experiencing chronic neck pain since 2006, resulting in headaches and pain radiating down his arms. He was diagnosed with hyperlipidemia, mixed type, chronic pain syndrome, a degenerative disc in his neck, diabetes

3

mellitus, and depression on March 17, 2009. He was originally prescribed hydrocodone for his pain, but due to the severe headaches and nausea it caused, his pain medication was changed to oxycodone. A cervical MRI was performed in April 2009 revealing multiple levels of disc protrusion. He was referred to a neurosurgeon for evaluation and to schedule a possible surgery.

Therefore, on June 3, 2009, Mr. Goudy saw Dr. Michael Munz at the Fort Wayne Neurological Center, NeuroSpine & Pain Center. He noted that Mr. Goudy reported having pain of seven on a scale of one to ten. He observed that Mr. Goudy had decreased range of motion in his neck, especially with regard to flexation and extension. He confirmed the MRI results, noting that the MRI revealed a large herniated disc at C3-4. Mr. Goudy elected to proceed with the surgery; on June 18, 2009, Dr. Munz performed a cervical discectomy and fusion.

Mr. Goudy was advised to see a physical therapist, which he did in August 2009. He was given a home exercise program, but reported that it did not provide much relief. In October 2009, Mr. Goudy was seen for a follow-up appointment, reporting he was still experiencing neck pain. X-rays of Mr. Goudy's cervical spine were normal, revealing no abnormalities, with evidence of postoperative changes. Again, he saw a physical therapist and was given a home exercise program to improve his posture and movement.

On February 7, 2010, Dr. Ibrar F. Paracha performed a consultative examination. He noted that Mr. Goudy had extensive limitations of range of motion on the cervical spine and mild limitations on forward flexion of the lumbar spine, and that Mr. Goudy's shoulder movements were limited due to his neck pain. Dr. Paracha concluded that Mr. Goudy had limited movement in his neck and also would be unable to lift certain amounts of weight due to the neck strain.

On March 3, 2010, Dr. J.V. Corcoran completed a Physical Residual Functional Capacity ("RFC") assessment. He concluded that Mr. Goudy was capable of occasionally lifting ten

pounds, frequently lifting less than ten pounds, and standing, walking, or sitting for six out of eight hours a day. He further noted that Mr. Goudy was limited in the upper extremities, including reaching overhead, could never climb ropes, ladders, or scaffolds, and could never crawl. He also noted that Mr. Goudy should avoid work environments that are prone to wetness and vibrations and should avoid unprotected heights and machinery. This RFC assessment was affirmed by Dr. M. Brill on May 27, 2010.

Mr. Goudy's pain persisted even though he continued to see his pain management specialist, Dr. Salud, on a regular basis. In April 2010, Dr. Salud increased Mr. Goudy's dosage of oxycodone and referred him to a neurosurgeon. This increased dosage, however, made Mr. Goudy feel "bad," so he returned to a lower dosage. In July 2010, Mr. Goudy again had neck surgery performed by Dr. Munz; however, post-surgery, he still complained of neck pain.

*Hearing Testimony*

At the hearing, Mr. Goudy testified that he was disabled due to his neck pain and diabetes. He testified that he lives in Kokomo, Indiana with his wife and adult daughter. Mr. Goudy noted that he currently substitute teaches a few days a week in various elementary schools near his residence. He takes insulin regularly for his diabetes, but does not experience any complications from diabetes except that if he gets a cut, it takes longer for it to heal. He is also on medication for high cholesterol and takes thirty milligrams of oxycodone and four tablets of butalbital four times a day for his pain. He reported that his pain is controlled and he can function, but the pain remains constant and seems to be getting worse. He reported that he occasionally does laundry, takes care of the yard, reads, uses a telescope, and attends church on a weekly basis.

The ALJ also heard testimony from the Vocational Expert ("VE"), Dewey Franklin. The ALJ asked the VE to consider a hypothetical individual with Mr. Goudy's age, education, and work experience who could perform light work, including the possibility of lifting twenty pounds occasionally and ten pounds frequently, and spends six hours of a workday sitting or standing. The ALJ also noted that the hypothetical individual was limited to occasional bending, stooping, and crouching, and was not to climb ladders or scaffolds or crawl. She also advised the VE that the individual also should not be working at heights or around dangerous machinery. Based on this hypothetical, the VE noted that this hypothetical person could not perform Mr. Goudy's past work but could work as a bookstore cashier, a department store cashier, or a library assistant.

### III. **DISCUSSION**

In his brief in support of his complaint, Mr. Goudy presents three arguments: 1) the ALJ failed to obtain a valid waiver of counsel; 2) the ALJ failed to discuss Mr. Goudy's impairments in light of an appropriate Listing and failed to follow SSR 96-6p; and 3) the denial fails to articulate the function-by-function assessment of Mr. Goudy's RFC and logically bridge the evidence to the denial's conclusion. Each argument will be addressed, in turn, below.

#### A. Waiver of Counsel

Mr. Goudy first argues that the ALJ did not obtain a valid waiver of counsel at the hearing. As Mr. Goudy correctly notes, the Seventh Circuit requires the ALJ to explain the following to a *pro se* claimant at the hearing: "1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991)). The Commissioner concedes that while the ALJ did explain to Mr. Goudy that he could have representation at the hearing, she did not obtain a valid waiver because

6

"she did not explain the benefits that at attorney might provide, nor did she mention that Plaintiff might have obtained free counsel, the possibility of a contingency agreement, or the limitation of fees to twenty-five percent of past-due benefits." Response at 7. The Court agrees with both parties that a valid waiver of counsel was not obtained in this case.

Nevertheless, the Commissioner argues that reversal is not warranted because the ALJ adequately developed the record. *See Binion*, 13 F.3d at 245 ("[A] claimant is not entitled to a remand based on inadequate notice of the right to representation unless the ALJ did not develop a full and fair record."). The Seventh Circuit has added teeth to this requirement, noting that the ALJ must "scrupulously and conscientiously probe into, inquire of and explore for all of the relevant facts" and that the burden to show this is properly placed on the Commissioner. *Id.* (quoting *Smith v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)).

The Court finds that the Commissioner has met her burden in this case of proving that the ALJ fully and fairly developed the record. The hearing lasted fifty-eight minutes, comprising mostly of Mr. Goudy's own testimony. The ALJ inquired into Mr. Goudy's family life, work experiences, medications, past surgeries, pain and limitations, and hobbies. *See id.* (finding that the ALJ fully and fairly developed the record by probing "into all of the relevant areas, questioning plaintiff about the medical evidence in the file, her medication, pain, daily activities, and physical ability to perform a number of activities."). She also had Mr. Goudy sign medical release forms so she could obtain his complete medical record from his doctors. Further, as the Commissioner notes, at each step of the hearing, the ALJ was careful to explain to Mr. Goudy how the hearing would proceed, how the record was organized, what the Dictionary of Occupational Titles was, and the purpose of the VE's testimony. *See* Response at 7. She also answered any and all questions he had, and allowed him to voice his opinions and concerns. In

7

reviewing the hearing transcript as well as the ALJ's decision, the Court agrees with the Commissioner that the ALJ fully and fairly developed the record.

"Once the Secretary establishes that the record was developed fully and fairly, the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap." *Binion*, 13 F.3d at 245. As the Commissioner notes, Mr. Goudy has not presented any evidence of prejudice or evidentiary gap.[1] Accordingly, the Court will not reverse the ALJ's decision on the grounds that she failed to obtain a valid waiver of counsel.

### B. The ALJ's Step Three Determination

Mr. Goudy next argues that the ALJ erred at Step three when she offered no analysis regarding whether he met or medically equaled a Listing; rather, she simply said, "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]." R. at 31. Mr. Goudy argues that the ALJ should have considered whether he met or medically equaled Listings 1.04, disorders of the spine, and 9.00(B)(5), diabetes mellitus.

Mr. Goudy is correct that the Seventh Circuit has cautioned that an ALJ should, at step three, cite the specific Listing she is considering. *See, e.g.*, *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (reversing in part because the ALJ failed to discuss or reference a Listing); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (noting that "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing"). However, it has also noted that the ALJ's failure to do so does not require an automatic reversal. *See Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) ("As to Rice's argument that the ALJ's failure to explicitly

---

[1] Mr. Goudy's argument in his brief is that because the waiver was invalid, reversal is warranted. He filed no Reply brief demonstrating any prejudice or evidentiary gap in response to the Commissioner's argument that the ALJ fully and fairly developed the record.

8

refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here."). Further, as the Commissioner correctly notes, the burden is on Mr. Goudy to prove that his conditions meet or medically equal Listings 1.04 and 9.00(B)(5). *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("Ribaudo [the claimant] has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing.").

Mr. Goudy has failed in this regard. He has cited no medical evidence at all suggesting his spine disorder or diabetes meet or medically equal either Listing.[2] With respect to his spine disorder, Mr. Goudy does not note which subpart of Listing 1.04 he claims to meet or medically equal—A, B, or C. The requirements are as follow:

    A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

    B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

    C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404 app. 1 (2014).

---

[2] Once again, the Court notes that his sole argument with respect to the ALJ's step three determination is that reversal is warranted because she did not specifically mention a Listing. He did not file a Reply brief responding to the Commissioner's argument that he did not meet his burden of showing how he met either Listing.

With respect to subpart A, the ALJ noted that Mr. Goudy did experience neck pain and limitations in movement as a result of the pain and neck strain. However, she also noted that his "straight leg raising was negative" and that there was no evidence of "weakness in his neck." R. at 32. There is no operative note of spinal arachnoiditis or any evidence that a tissue biopsy was ever performed on Mr. Goudy, ruling out subpart B. Finally, with respect to subpart C, there is no evidence that Mr. Goudy cannot ambulate effectively—the ALJ noted that "his gait was normal without the need for any assistive device." *Id.* It is clear from the ALJ's decision that she considered Listing 1.04 in her analysis, despite the fact that she did not specifically mention the Listing.

With respect to his diabetes Listing, the Court notes that Listing 9.00, endocrine disorders, does not have specific criteria to meet in order for a claimant to be deemed disabled due solely to diabetes. Rather, the Social Security Administration ("SSA") notes, "We evaluate impairments that result from endocrine disorders *under the listings for other body systems*." 20 C.F.R. § 404 app. 1 (2014) (emphasis added). Again, Mr. Goudy has failed to produce evidence that his diabetes has some sort of effect on another body system such that he could meet or medically equal a different Listing. Notwithstanding, the ALJ noted, and the Court agrees, that "there are generally few symptoms noted in the record" in regard to his diabetes. R. at 32. His blood sugar has been stable, there is no indication of diabetic retinopathy, he has had no complications from his disease, and his diabetic exams have been normal. *Id.* Again, while the ALJ did not specifically mention Listing 9.00, it is clear she considered Mr. Goudy's symptoms in determining whether his diabetes produced severe enough symptoms such that he met or medically equaled a Listing.

Mr. Goudy also argues that the ALJ erred in not obtaining an opinion from a medical expert as to if he met or medically equaled a Listing. The Commissioner points to the Disability Determination and Transmittal forms ("the Forms") that were completed on March 15, 2010, and May 27, 2010, indicating that Mr. Goudy was not disabled. R. at 74-77. The Seventh Circuit has stated that "[t]hese forms conclusively establish that *consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely upon the opinion of these medical experts*." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (internal citations and quotation marks omitted) (emphasis added). Accordingly, the ALJ did not err in failing to consult another medical expert to determine if Mr. Goudy met or medically equaled a Listing, because she properly relied on the Forms.[3]

## C. The ALJ's RFC Analysis

Mr. Goudy's last argument involves the ALJ's RFC analysis—Mr. Goudy argues that "[t]here is absolutely no basis within the record for the ALJ's RFC." Pl.'s Brief at 17. The ALJ's conclusion found that Mr. Goudy "has the residual functional capacity to perform light work . . . except he is limited to occasional bending, stooping, or crouching; no work climbing ladders or scaffolds; no crawling; no work at heights or around dangerous moving machinery; and no work involving exposure to vibration." R. at 31.

---

[3] Mr. Goudy also argues that the ALJ was in violation of Social Security Ruling 96-6p in failing to obtaining an "updated medical opinion from a medical expert where additional medical evidence is received that could modify the State Agency medical consultant's finding that the impairment(s) was not equivalent in severity to any impairment in the Listing of Impairments." Pl.'s Brief at 14. While Mr. Goudy is correct that SSR 96-6p does require this, he fails to direct the Court to what "additional medical evidence" was received that might have modified the State Agency doctors' conclusions.

Mr. Goudy first argues that the ALJ did not rely on an expert or medical advice or opinion regarding his functional abilities. This is incorrect. The ALJ relied on, and cited to, both Dr. Paracha and Dr. Corcoran's findings regarding Mr. Goudy's functional limitations. Dr. Corcoran's findings were also affirmed by another medical expert, Dr. Brill. The ALJ, therefore, did rely on medical experts.

Mr. Goudy next argues that the RFC omits the fact that he can perform no overhead reaching, as noted by Dr. Corcoran. *See* R. at 402 (noting that Mr. Goudy was limited in reaching overhead because of his "limited ROM [range of movement] in shoulders and Cervical spine"). While the ALJ left out this limitation in her RFC determination, she specifically asked the VE at the hearing whether the jobs he identified—the bookstore cashier, the department store cashier, and the library assistant—"require overhead reaching." *Id*. at 66. The VE noted that *only* the library assistant "might sometimes" have to reach overhead to return books to the stack. *Id*. The Court does not see any harmful error, therefore, stemming from the ALJ's RFC, given that the other two jobs identified that Mr. Goudy could perform do not require overhead reaching. Finally, as the Commissioner notes, the ALJ was not required to perform a "function by function" analysis in determining Mr. Goudy's RFC, *Knox v. Astrue*, 327 Fed. Appx. 652, 657, (7th Cir. 2009)—the Court finds that the ALJ sufficiently addressed Mr. Goudy's symptoms, limitations, and medical opinions in crafting his RFC, and that substantial evidence supports this determination.

## IV. CONCLUSION

As set forth above, the ALJ in this case satisfied her obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 2/10/14

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.